IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 20-cv-03543-PAB

TELIAX, INC., d/b/a Teliax, Inc.,

Plaintiff,

v.

CENTURYLINK COMMUNICATIONS, LLC, and
LEVEL 3 COMMUNICATIONS, LLC,

Defendants.

---

# ORDER

---

This matter is before the Court *sua sponte* on Defendants' Notice of Removal [Docket No. 1]. Defendants state that the Court has subject matter jurisdiction over this action because it is a "civil action 'arising under the Constitution, laws, or treaties of the United States.'" Docket No. 1 at 2 (quoting 28 U.S.C. § 1331).

In every case and at every stage of the proceeding, a federal court must satisfy itself as to its own jurisdiction, even if doing so requires *sua sponte* action. *See Citizens Concerned for Separation of Church & State v. City & Cnty. of Denver*, 628 F.2d 1289, 1297 (10th Cir. 1980). Absent an assurance that jurisdiction exists, a court may not proceed in a case. *See Cunningham v. BHP Petroleum Gr. Brit. PLC*, 427 F.3d 1238, 1245 (10th Cir. 2005). Courts are well-advised to raise the issue of jurisdiction on their own, regardless of parties' apparent acquiescence. First, it is the Court's duty to do so. *Tuck v. United Servs. Auto. Ass'n*, 859 F.2d 842, 844 (10th Cir. 1988). Second, regarding subject matter jurisdiction, "the consent of the parties is

irrelevant, principles of estoppel do not apply, and a party does not waive the requirement by failing to challenge jurisdiction." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) (internal citations omitted). Finally, delay in addressing the issue only compounds the problem if, despite much time and expense having been dedicated to the case, a lack of jurisdiction causes it to be dismissed. *See U.S. Fire Ins. Co. v. Pinkard Constr. Co.*, No. 09-cv-00491-PAB-MJW, 2009 WL 2338116, at *3 (D. Colo. July 28, 2009).

"The party invoking federal jurisdiction bears the burden of establishing such jurisdiction as a threshold matter." *Radil v. Sanborn W. Camps, Inc.*, 384 F.3d 1220, 1224 (10th Cir. 2004). Defendants assert that the Court has federal question jurisdiction to hear their case on removal pursuant to 28 U.S.C. § 1331. Under § 1331, "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "Federal district courts must strictly construe their removal jurisdiction." *Envtl. Remediation Holding Corp. v. Talisman Capital Opportunity Fund, L.P.*, 106 F. Supp. 2d 1088, 1092 (D. Colo. 2000). "[A]ll doubts are to be resolved against removal." *Fajen v. Found. Reserve Ins. Co., Inc.*, 683 F.2d 331, 333 (10th Cir. 1982). Thus, the Court presumes that no jurisdiction exists absent an adequate showing by the party invoking federal jurisdiction. *Lorentzen v. Lorentzen*, No. 09-cv-00506-PAB, 2009 WL 641299, at *1 (D. Colo. Mar. 11, 2009).

"Under the longstanding well-pleaded complaint rule . . . a suit 'arises under' federal law only when the plaintiff's statement of his own cause of action shows that it is

based upon federal law." *Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009) (quoting *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908)) (internal quotation marks and alteration marks omitted). In other words, "[a]s a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003). For removal jurisdiction, "the required federal right or immunity must be an essential element of the plaintiff's cause of action, and . . . the federal controversy must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal." *Fajen*, 683 F.2d at 333 (internal quotation marks omitted); *see also Gully v. First Nat'l Bank*, 299 U.S. 109, 113 (1936).

Here, the initial pleading in state court was the complaint. Docket No. 1-1. Therefore, the Court must analyze the complaint to determine whether it is based on federal law. *See, e.g., King v. United Way of Central Carolinas, Inc.*, 2009 WL 2432699, at *3 (W.D.N.C. June 16, 2019); *Butts v. Hansen*, 650 F. Supp. 996, 998 (D. Minn. 1987); *Perimeter Lighting, Inc. v. Karlton*, 456 F. Supp. 355, 358 (N.D. Ga. 1978).

According to the complaint, plaintiff provides various services to telecommunications providers and carriers. Docket No. 1-1 at 8, ¶ 7. Plaintiff has agreed with Level 3 Communications, LLC ("Level 3") and CenturyLink Communications, LLC ("CenturyLink") pursuant to Teliax Tariff F.C.C. No. 1 to route certain "telephony call and data traffic and provide[] related services." *Id.*, ¶ 8. Plaintiff and defendants negotiated their commercial terms in two agreements (collectively, the "Commercial Agreements"), one with Level 3 and one with CenturyLink. *Id.* at 9–10,

¶¶ 14–19.

On November 1, 2018, CenturyLink filed an informal complaint against Teliax before the Federal Communications Commission ("FCC"), the subject of which is unrelated to the Commercial Agreements. *Id.* at 10, ¶¶ 20–21. On December 19, 2019, defendants began to lodge disputes with Teliax regarding Teliax's invoices from September 2019 to February 2020, "claiming receipt of excess usage not in accordance" with the Commercial Agreements. *Id.*, ¶¶ 23–24. These disputes form the basis of this lawsuit. According to the complaint, defendants insisted that the calls associated with these disputes violated the parties' Commercial Agreements because Teliax routed the calls to defendants using the wrong protocol. *Id.* at 11, ¶ 27.[1] Even though plaintiff claims that "all amounts invoiced were legitimate and due," plaintiff offered defendants "a substantial good-faith credit to resolve and close-out" these disputes. *Id.* at 12, ¶ 33. According to the complaint, defendants agreed to accept this credit and also agreed to pay the remainder of what they owed on the disputed invoices. *Id.*, ¶¶ 33–34. The complaint refers to the remainder as the "Agreed Amount." *Id.*, ¶ 34. However, despite defendants agreeing to pay the Agreed Amount, plaintiff alleges that defendants are attempting to offset the Agreed Amount from charges that CenturyLink disputes in the unrelated informal FCC complaint. *Id.* at 13, ¶ 39. Plaintiff claims that, "[r]ather than pay according to the [Commercial Agreements]

[1] Plaintiff disputes that it mishandled the calls associated with these disputes and insists that its handling was both correct and consistent with defendants' own protocols and industry best practice. *Id.*, ¶ 29. Plaintiff also insists that the Commercial Agreements "do not address how calls should be routed, only how the rate should be determined." *Id.* at 12, ¶ 32.

and as agreed to, [defendants] [are] unlawfully withholding the amounts owing to Teliax seeking to setoff these amounts against unrelated services and disputes which are the subject of the FCC Informal Complaint." *Id.*, ¶ 46.

In their Notice of Removal, defendants claim that the Court has federal question jurisdiction because resolving plaintiff's claim regarding the Agreed Amount requires the Court to "interpret and construe the interstate tariff on which the FCC Informal Complaint is based." Docket No. 1 at 3, ¶ 8. Defendants support their jurisdictional claim with two arguments – first, that the Court must interpret the tariff to resolve plaintiff's claims and, second, plaintiff has accused defendants of "attempt[ing] to commingle unrelated disputes" concerning the Informal Complaint, *id.* at 4, ¶ 11, which makes the Informal Complaint relevant and causes the Court to have to interpret the tariff.

As to the first argument, defendants have not established why the Court would need to interpret the tariff. The issue in this lawsuit is whether defendants owe plaintiff the Agreed Amount required by the Commercial Agreements. *Id.* at 12, ¶ 38. Defendants seem to agree with plaintiff that "the FCC Informal Complaint is not based on the parties' [C]ommercial [A]greements"; rather, the "Informal Complaint is based on Teliax's interstate tariff." *Id.* at 2, ¶ 7. Therefore, it would seem that, resolution of this dispute, which concerns the Agreed Amount, is based on the Commercial Agreements.

"For a case to arise under federal law within the meaning of § 1331, the plaintiff's 'well-pleaded complaint' must establish one of two things: 'either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Firstenberg v. City of Santa Fe,*

*N.M.*, 696 F.3d 1018, 1023 (10th Cir. 2012) (quoting *Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227, 1232 (10th Cir. 2006)). Federal law does not create any of plaintiff's causes of action, which sound in breach of contract, *quantum meruit*, unjust enrichment, and breach of the implied covenant of good faith and fair dealing. *See* Docket No. 1-1. These are state common law claims based on the laws of Delaware. *Id.* at 26, 44. Defendants do not argue otherwise.

Because federal law does not create the cause of action, defendants' assertion of federal question jurisdiction requires that plaintiff's right to relief depends on resolution of a "substantial question of federal law." *Firstenberg*, 696 F.3d at 1023 ("For a case to arise under federal law . . . plaintiff's . . . complaint must establish . . . either that federal law creates the cause of action or that plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law" (internal quotation omitted)). The relief plaintiff seeks, however, does not depend on the resolution of a substantial question of federal law. This dispute concerns the Agreed Amount and the Commercial Agreements, not the tariff or the FCC Informal Complaint, which are unrelated.[2] Plaintiff alleges that defendants breached the Commercial Agreements by

---

[2] While plaintiff mentions the federal tariff, *TON Servs., Inc. v. Qwest Corp.*, 493 F.3d 1225, 1236 (10th Cir. 2007) ("once a . . . tariff is approved by the FCC . . ., the terms of the federal tariff are considered to be the law" (internal quotation omitted)), it "takes more than a federal element to open the 'arising under' door" of § 1331. *Empire Healthchoice Assurance, Inc. v McVeigh*, 547 U.S. 677, 701 (2006). The "'substantial question' branch of federal question jurisdiction is exceedingly narrow – a 'special and small category' of cases." *Gilmore v. Weatherford*, 694 F.3d 1160, 1170–72 (10th Cir. 2012) (quoting *Empire*, 547 U.S. at 699). For instance, the "mere need to apply federal law in a state-law claim" will not "suffice to open the 'arising under' door." *Grable & Sons Metal Prods., Inc. v. Darue Eng. & Mfg.*, 545 U.S. 308, 313 (2005). Federal jurisdiction demands "not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages though to be inherent in

failing to pay the amounts due from them. Docket No. 1-1 at 13, ¶ 46. In the Notice of Removal, defendants claim that "the amounts Defendants have disputed and withheld pursuant to the FCC Informal Complaint, and their legal basis for so disputing and withholding, . . . will require the Court to interpret and construe the interstate tariff." Docket No. 1 at 3. Defendants have provided no reason to believe that a resort to federal law is necessary to determine the disputed "amounts." Moreover, under Delaware law, offset of payments or amounts due, through either set-off or recoupment, is a defense to breach of contract. The Delaware Supreme Court explained these two defenses in *Finger Lakes Capital Partners, LLC v. Honeoye Lake Acquisition, LLC*, 151 A.3d 450 (Del. 2016). The court stated that "[s]et-off is a mode of defense by which the defendant acknowledges the justice of the plaintiff's demand, but sets up a defense of his own against the plaintiff, to counterbalance it either in whole or in part." *Id.* at 453. Recoupment, on the other hand, "is a . . . defense somewhat analogous to set-off in its character, the chief distinction, however, being that the defense of set-off arises out of an independent transaction, but the defense of recoupment goes to the reduction of the plaintiff's damages for the reason that he, himself, has not complied with the cross obligations arising under the same contract." *Id.* A defense based on federal law, however, cannot support federal jurisdiction and, therefore, cannot support removal. *See Beneficial Nat'l Bank*, 539 U.S. at 6.

Defendants' second argument for jurisdiction is that, because plaintiff has accused defendants of engaging in "unlawful self-help" and an "unfair course of

---

a federal forum. *Id.* As in *Empire*, the Court considers the "bottom-line practical issue," 547 U.S. at 701, which, here, is the Agreed Amount.

dealing" by "attempt[ing] to commingle unrelated disputes," the Court will have to "interpret and apply the federal tariff questions implicated by Defendants' pending FCC Informal Complaint." Docket No. 1 at 4, ¶ 11. Defendants again do not explain why resolving this question depends on the interpretation of the tariff or on the resolution of a substantial question of federal law. Instead, defendants once again rely upon a federal defense.

Because it does not appear from the face of plaintiff's complaint that plaintiff's claims arise under federal law, *see Warner Bros. Records, Inc. v. R. A. Ridges Distrib. Co., Inc.*, 475 F.2d 262, 264 (10th Cir. 1973) (no right to removal on face of plaintiff's complaint, which "[did] not invoke any federal laws," "[made] no mention of a federal law," and did not "allege that the cause [arose] under any such law"), the Court does not have jurisdiction pursuant to 28 U.S.C. § 1331.

It is therefore

**ORDERED** that this case is **REMANDED** to the District Court for the City and County of Denver, Colorado, where it was originally filed as Case No. 2020CV33721. It is further

**ORDERED** that Defendants' Motion to Stay Case and Refer Issues to FCC [Docket No. 26] is **DENIED** as moot.

DATED February 1, 2021.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge